UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS GIANINO, ARNOLD LEE, and LORI RISMAN, on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALACER CORPORATION,<br><br>Defendant. | Case No.: SACV 09-01247-CJC(RNBx)<br><br><br>ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

## I. INTRODUCTION

Plaintiffs Nicholas Gianino, Arnold Lee, and Lori Risman (collectively, "Plaintiffs") have brought claims on behalf of themselves and putative class members asserting that Defendant Alacer Corporation ("Alacer") violated California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA") by falsely representing that its product, Emergen-C, benefits

one's immune system. Plaintiffs now move to certify a nationwide class based on Federal Rule of Civil Procedure 23(b)(3), consisting of all individuals who purchased Emergen-C from October 28, 2005 to the present. Plaintiffs seek to adjudicate all of the class claims under California law. Alacer opposes certification of a nationwide class for claims arising under California law. It contends that California's consumer protection laws cannot be applied to a nationwide class with members in all fifty states and, consequently, common issues of law do not predominate over individual issues of law and litigating this case as a nationwide class action would be an unfair and inefficient method for adjudicating the parties' controversy. For the following reasons, the Court agrees with Alacer and DENIES Plaintiffs' motion.

## II. ANALYSIS

In order for a class action to be certified under Rule 23(b)(3), the class representatives must show "the questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members and that a class action is **superior** to other available methods for the fair and efficient adjudication of the controversy."[1] Fed. R. Civ. P 23(b)(3). The two requirements of Rule 23(b)(3) are commonly referred to as the "predominance" and "superiority" requirements. The district court must conduct a rigorous analysis to determine whether the class representatives have satisfied both of these requirements. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2011).

---

[1] The class representatives also must satisfy the threshold requirements of Rule 23(a). Because Plaintiffs cannot show that a nationwide class is appropriate under Rule 23(b)(3), the Court need not, and does not, reach the question whether Plaintiffs have satisfied those threshold requirements.

### A. Predominance

The Rule 23(b)(3) predominance inquiry tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Where the applicable law in a case derives from the law of numerous states, as opposed to just one state, differences in state law will "compound the disparities" among class members from different states. *Zinser*, 253 F.3d at 1189. Certifying a class when the laws of every state apply can create insuperable obstacles in adjudicating the case in a fair and efficient manner. Variations in state law can swamp any common issues and interject a multitude of different legal standards governing a particular claim. The presentation of evidence at trial, jury instructions, and verdict forms become cumbersome, time-consuming, confusing, and unduly prejudicial to the parties.

To avoid the inevitable problems that arise when applying the laws of all fifty states, Plaintiffs urge the Court to apply California law to all their claims. (Pls.' Mot. Class Cert., at 22.) Alacer, on the other hand, opposes uniform application of California law and instead asserts that California's choice of law rules dictate that the laws of all fifty states must be applied to resolve Plaintiffs' claims. (Def.'s Opp'n to Mot. Class Cert., at 33.) The Court now will determine whose position is right.

To determine the applicable law, a "federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser*, 253 F.3d at 1187. "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001) (internal quotation marks omitted.) If contacts are sufficient, the burden then shifts to the opposing party to demonstrate that

foreign law, rather than California law, should apply to the class claims. *Id.* California law may only be used on a class wide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* To determine whether those interests outweigh California's interest, the Court must apply a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza v. Am. Honda Mtr. Co.*, 666 F.3d 581 (2012) (quoting *McCann v. Foster Wheeler, LLC*, 48 Cal.4th 68, 81–82 (2010)).

### 1. Conflict of Laws

Alacer has presented a comprehensive nationwide analysis, detailing the significant variations in the states' consumer protection and fraud laws. (Paris Decl., Exhs. 15–16; Def.'s Opp'n to Mot. Class Cert., at 34.) For instance, regarding Plaintiffs' consumer protection claims, Alacer points out that states have different injury and deception requirements. (Def.'s Opp'n to Mot. Class Cert., at 34.) While the majority of states require proof of an injury, at least 2 states, Delaware and New Mexico, as well as the District of Columbia, have no injury requirement. (*Id.*) Other states, such as

Maryland, require "substantial injury." (*Id.*)  Similarly, while many states do not have a deception requirement, other states such as Illinois, require proof of actual deception. (*Id.*)

Alacer highlights many other differences among the states' consumer protection laws beyond the injury and deception requirements.  (*Id.*)  First, at least nine states require some degree of scienter for a consumer protection claim, including Colorado, Kansas, Mississippi, Nevada, South Dakota, Utah, Virginia, Wisconsin, and Wyoming. (*Id.*)  Other states, such as Pennsylvania, require knowledge or reckless disregard.  (*Id.*) Second, at least eight states include a reliance requirement in their consumer protection laws, including California, Arizona, Indiana, Oregon, Pennsylvania, Virginia, West Virginia, and Wisconsin.  (*Id.*)  In contrast, other states do not require a showing of reliance, including Alabama, Connecticut, Delaware, Illinois, Massachusetts, and New Hampshire.  (*Id.*); *see also Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008). Third, at least seven states require a plaintiff to send a pre-filing notice to the defendant in order to file a claim, including Alabama, Georgia, Indiana, Massachusetts, Texas, and Wyoming.  (Def.'s Opp'n Mot. Class Cert., at 35.)  Fourth, statutes of limitations for consumer protection laws vary significantly from one to ten years among the states: one year (Arizona and Louisiana); two years (Arkansas, Idaho, Indiana, Kentucky, Ohio, Texas, and Virginia); three years (California (CLRA and FAL), Connecticut, Colorado, District of Columbia, Delaware, Illinois, Kansas, Maryland, New Hampshire, New York, and Wisconsin); four years (California (UCL), Florida, Georgia, Hawaii, Massachusetts); five years (Arkansas and Missouri); six years (Maryland, Minnesota, New Jersey, North Dakota, Pennsylvania, Vermont); ten years (Rhode Island).  (*Id.*); *see also In re Toyota Motor Corp.*, 785 F. Supp. 2d 925, 933 (C.D. Cal. 2011).  Fifth, some states do not permit class actions under their consumer protection laws, including Alabama, Louisiana, Mississippi, Montana, South Carolina, Tennessee, and Virginia. ((Def.'s Opp'n to Mot. Class Cert., at 34.)  Other states primarily restrict class actions to state residents,

including Connecticut and Illinois. (*Id*.) At least one state, Iowa, does not recognize a private right of action under its consumer protection law. (*Id*.) Sixth, there are material variations in the remedies available under the states' consumer protection laws. (*Id*.) While some states permit recovery of damages, including Arizona, Alaska, Hawaii, Illinois, Indiana, Massachusetts, New Hampshire, Rhode Island, South Dakota, and Texas; other states limit the available remedies to equitable or restitutionary relief, including California (UCL and FAL), Georgia, and Utah. (*Id*.) In addition, at least eight states do not permit punitive damages, including California (UCL and FAL), Louisiana, Maine, Missouri, New Jersey, South Carolina, South Dakota, and Tennessee. (*Id*.)

Alacer also points out material variations among the states' intentional and negligent misrepresentation laws. First, there is a split among the states as to whether a defendant must knowingly make a material misrepresentation or whether reckless disregard of the truth of the representation is sufficient for an international misrepresentation claim. (*Id.* at 36–37.) Nineteen states require scienter for an intentional misrepresentation claim, including California, Alaska, Colorado, Connecticut, Florida, Illinois, Massachusetts, New Jersey, New York, Oregon, Vermont, and West Virginia; whereas, thirty-one states do not have a scienter requirement, including Arizona, Indiana, Mississippi, Missouri, Nevada, New Hampshire, North Dakota, Ohio, Pennsylvania, Texas, and Wyoming. (*Id*. at 37.) Second, there are significant differences among the states regarding the standard of proof. Some states require a plaintiff to prove a fraud claim by "clear and convincing evidence", including Colorado, Connecticut, Florida, Illinois, Massachusetts, New Hampshire, New York, Pennsylvania, and West Virginia; whereas, other states require a plaintiff to prove a fraud claim by a "preponderance of the evidence", including Alaska, California, Delaware, Indiana, North Carolina, Rhode Island, Tennessee, Texas, and Wyoming. (*Id*.) Third, at least five states do not require a plaintiff to show that the defendant had intent to induce reliance on a material misrepresentation for a common law fraud claim, including Alabama, Colorado,

Tennessee, Vermont, and West Virginia. (Def.'s Opp'n to Mot. Class Cert., at 37.) Fourth, statutes of limitations for intentional and negligent misrepresentation laws vary significantly from one to six years among the states: one year (Louisiana); two years (Alabama, Kansas, Oklahoma, Pennsylvania, Texas (negligent)); three years (California, Colorado, Massachusetts, New Hampshire, South Carolina, Washington); four years (Florida, New Mexico, Ohio, Texas (intentional)); five years (Illinois, Iowa, Missouri); six years (Hawaii, Indiana (intentional), New York, Vermont). (*Id.*) Fifth, states apply different methods of calculating damages for misrepresentation claims. Some states use a "benefit of the bargain" method based upon plaintiff's expectation damages, including Arizona, California, Colorado, Illinois, Kansas, Massachusetts, New Hampshire, and Texas. (*Id.*) Some states use an "out of pocket" method which allows a plaintiff to recover only reliance damages, including Louisiana, Minnesota, New York, Pennsylvania, and Wyoming. (*Id.*) Other states take a "flexible" approach to calculating damages, including Florida, Idaho, Iowa, Maryland, New Jersey, Vermont, and Washington. (*Id.*)

None of the foregoing differences are trivial. *See Mazza*, 666 F.3d at 591. The differences are material. *See, e.g.*, *In re Hitachi Tele. Optical Block Cases*, No. 08cv1746, 2011 WL 9403 at 6 (S.D. Cal., Jan. 3, 2011) (stating that "there are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to [activities] in other states with different rules."); *In re Grand Theft Auto Video Game*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) ("Most of the courts that have addressed the issue have determined that the consumer-fraud…laws in the fifty states differ in relevant respects.") They involve the essential requirements to establish a claim. They involve the types of relief or remedies available to a plaintiff. Many of them will mean the difference between success

and failure. *Mazza*, 666 F.3d at 591. They determine whether the relief will be generous, modest, or if there is any relief available at all. Because the conflicts in the laws of the states are material, the Court must proceed to the second step and determine whether each state has an interest in applying its law in the case.

### 2. Interests of Foreign Jurisdictions

The consumer protection and fraud law of every state is important. The law reflects the state's reasoned judgment as to what conduct is permitted or proscribed within that state's borders. *Mazza*, 666 F.3d at 591; *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Each state carefully balances its duty to protect its consumers from injuries caused by out-of-state businesses with its duty to shield those businesses from what the state may consider excessive regulation or litigation. *Mazza*, 666 F.3d at 591 ("Each state has an interest in setting the appropriate level of liability for companies conducting business within its territory.").

This case clearly implicates each state's interest. The purported nationwide class consists of members from 50 states. Plaintiffs allege that consumers from each of those states were defrauded into buying and using a product in their state. (Pls.' Mot. Class Cert., at 20.) Alacer admits that it sold its product in 50 states, but vehemently denies that it defrauded any consumer in any of those states. (Def.'s Opp'n Pls.' Mot. Class Cert, at 5.) Given the parties' respective positions, all 50 states have an interest in having their own laws applied to the consumer transactions that took place within their borders.

### 3. Which State Interest Is Most Impaired

This final step of California's governmental interest test is designed to accommodate conflicting state policies. *McCann*, 48 Cal. 4th at 97. The Court is not

permitted to weigh the conflicting state interests to determine which conflicting state law manifests the "better" or "worthier" social policy. *Mazza*, 666 F.3d at 593 (citing *McCann*, 48 Cal. 4th at 97). The Court must recognize the importance of federalism and every state's right to protect its consumers and promote those businesses within its borders. *Id*.

Undoubtedly, California has a significant interest here in applying its laws to the consumer transactions that took place within its borders. Alacer's corporate headquarters are in California, a large number of the proposed nationwide class resides in California, almost 50% of the Emergen-C products were manufactured in California, the California Department of Health Services has regulated the Emergen-C products from California, and the corporate decisions regarding packaging and marketing of the Emergen-C products were all made in California. (Pls.' Reply to Mot. Class Cert., at 17; Resse Decl., Ex. I.) But California's interest in applying its law to residents of other states who purchased and used the Emergen-C products in those other states is much more attenuated. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982). Indeed, California itself recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest". *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980). California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong. *See McCann*, 48 Cal. 4th at 94 n.12. Here, the place of the wrong as to consumers from other states is not California. *See Mazza*, 666 F.3d at 593–94 (finding "the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California"). It is the state where each consumer resides. And those states have a compelling interest in protecting their consumers from in-state injuries caused by a California corporation doing business within their borders and in delineating the scope of recovery for the consumers under their own laws.

Accordingly, the Court concludes that every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class. Each class member's claims instead must be governed by and decided under the law of the state in which the transaction took place.

Considering that the laws of 50 states will have to be applied in this case, the Court concludes that the common questions of law do not predominate over the questions affecting individual class members as required by Rule 23(b)(3). The claims of members from California raise significantly different legal issues from those of members from other states. Those different legal issues eclipse any common issues of law that exist. Certification of the entire nationwide class under California law therefore would be improper.

**B. Superiority**

Rule 23(b)(3) also requires that the Court find the nationwide class mechanism superior to other methods for the fair and efficient adjudication of the controversy. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (finding a class action superior where class wide litigation of common issues will reduce litigation costs, promote greater efficiency, and no realistic alternative to a class action exists). The merits of a nationwide class action must be balanced, in terms of fairness and efficiency, against other available methods of adjudication. The Court is convinced that a nationwide class action is not a superior method for resolving the parties' controversy. To the contrary, it would be a very unfair and inefficient method for adjudicating this case. If this case proceeded to trial as a nationwide class, the Court would face the impossible task of instructing the jury on the law of 50 different states. *Zinser*, 253 F.3d at 1192 ("We have previously held that when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is

not the superior method of adjudication.") (internal quotations ommited); *see also Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 688–89 (D. Kan., 2007) (declining to certify a class because of the variations in the law of the 18 jurisdictions represented by the putative class); *Oxford v. Williams Cos., Inc.*, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001) (denying class certification after finding the application of 51 jurisdictions' laws unmanageable). The trial would devolve quickly into an unmanageable morass of divergent legal issues. Certain evidence would be admissible for some class members but not others. Fifty different sets of jury instructions and verdict forms would have to be crafted with the jury having the daunting task of applying those instructions and verdicts to a nationwide class encompassing millions of consumers. Needless to say, the trial would be incredibly time-consuming, unnecessarily disjointed, hopelessly confusing, and unfairly prejudicial to Alacer and many, if not all, of the members of the class. Justice demands that this case not be adjudicated as a nationwide class action[2].

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED.

DATED:     February 27, 2012

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[2] In their reply, Plaintiffs improperly argue that the Court consider certifying four or more subclasses. A party cannot raise new legal arguments and theories in a reply brief. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (2000). In any event, as pointed out by Alacer at the hearing on Plaintiffs' motion for nationwide class certification, Plaintiffs' proposed subclasses suffer from the same shortcomings as their proposed nationwide class, albeit to a lesser extent, and fall far short of satisfying the predominance and superiority requirements of Rule 23(b)(3).